IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROGER D. SANDERS aka TATUM,

                Plaintiff,

      v.

SHERIFF JEFF DICKERSON,
DEPUTY MARTY KYLES, DEPUTY
BEATTY, and COLUMBIA COUNTY
JAIL,

                Defendants.

CV-09-299-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Roger D. Sanders aka Tatum ("Sanders"), was a *pro se* prisoner when he filed

this lawsuit on March 19, 2009, against Sheriff Jeff Dickerson ("Sheriff Dickerson"), Deputy

Marty Kyles ("Kyles"), Deputy Beatty ("Beatty"), and the Columbia County Jail.  Pursuant to

42 USC § 1983, Sanders alleges that the defendants violated his constitutional rights while in

custody by denying him necessary medical care, denying him access to the courts, charging him

1 - FINDINGS AND RECOMMENDATION

for lodging and incidental fees prior to a judgment of conviction, and failing to appropriately

respond to his grievances.  Sanders seeks declaratory and injunctive relief and monetary

damages.

Defendants have moved for summary judgment on all of Sanders' claims (docket # 101).

On February 9, 2010, this court issued a Summary Judgment Advice Notice (docket # 82) to

Sanders explaining the requirements for a summary judgment motion.  For the reasons that

follow, defendants' motion should be granted.

## LEGAL STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any

material fact and "the moving party is entitled to judgment as a matter of law."  The moving

party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317,

323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the

pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing

FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but

only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d

1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is

'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material

fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989), *cert*

*denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).  The substantive law

governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pac.*

*Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The court must view the inferences

drawn from the facts "in the light most favorable to the nonmoving party."  *Id.* (citation omitted).

In civil cases involving a plaintiff proceeding *pro se*, this court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. *Alvarez v. Hill*, 518 F3d 1152, 1158 (9th Cir 2008). *Pro se* complaints are held to a less strict standard than those drafted by a lawyer. *Haines v. Kerner*, 404 US 519, 520 (1972); *Bonner v. Lewis*, 857 F2d 559, 563 (9th Cir 1988). Before dismissing a *pro se* complaint, the court must, in many circumstances, instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend. *See Eldridge v. Block*, 832 F2d 1132, 1136 (9th Cir 1987). Nevertheless, a *pro se* plaintiff's claims may be dismissed where it appears beyond doubt that the plaintiff can prove no set of facts in support that would entitle him to relief. *Barrett v. Belleque*, 554 F3d 1060, 1061 (9th Cir 2008).

## UNDISPUTED FACTS

Sanders did not file objections to defendants' Concise Statement of Facts and failed to set forth specific facts in the record that would create a genuine issue of material fact for trial. As a result, Sanders has effectively admitted the facts set forth by defendants. LR 56-1(f) ("material facts set forth in the concise statement of the moving party . . . will be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party"); *see also Carmen v. San Francisco United School Dist.*, 237 F3d 1026, 1031 (9th Cir 2001) (party opposing a summary judgment motion must, in its opposition brief, point to specific facts and materials it wishes the judge to consider).

Sanders has a lengthy criminal history beginning in 1983 which has resulted in his repeated incarceration in the Columbia County Jail. Legore Aff., Ex. 1, p. 5. In December 2000, Sanders was arrested and lodged in the Columbia County Jail on a parole violation due to abuse of alcohol and prescription drugs. *Id*, Ex. 2, pp. 1-3. Earlier that year, Sanders told his parole

officer that he only had "about three to six months to live" because of his "medical condition," and he did not care if he got arrested since he would only do "local jail time" due to his medical condition. *Id*, Ex. 2, p. 3.

While incarcerated in 2000-01, Sanders complained of the same medical and other issues as are the subject of this lawsuit, for which the County made arrangements to allow Sanders to travel to the Portland Veterans Affairs Medical Center ("VA") for medical appointments related to these complaints. *Id*, Ex. 3, pp. 1, 3. During this period, Sanders made repeated requests regarding access to the law library, accommodation for his medical condition, the jail grievance procedure, and his inmate work status as it related to his medical condition. *Id*, Ex. 16, pp. 1-4.

On September 4, 2007, Sanders' parole was revoked and he was sanctioned with a term of incarceration at the Columbia County Jail. *Id*, Ex. 4. The parole board referred specifically to Sanders' problems with drugs, alcohol, and domestic violence. *Id*, Ex. 4, p. 2.

In February 2009, Sanders was arrested for a parole violation and new criminal activity. *Id*, Ex. 5. Sanders did not contest the basis for his detention. *Id*. He was booked into the Columbia County Jail on February 24, 2009, and released on April 17, 2009. *Id*, Ex. 6; Cutright Decl., ¶ 3. During this period, jail medical staff consulted with Sanders' VA physicians, reviewed his VA medical records, and agreed on a treatment plan for Sanders while at the jail. Legore Aff., Ex. 7, pp. 2-3,[1] & Ex. 8. On April 14, 2009, Columbia County transported Sanders to the VA for an appointment with his surgeon, Dr. Goldman who scheduled hernia repair surgery for the following month after Sanders' release. *Id*, Ex. 7, pp. 1, 3-4. During this period,

---

[1] Defendants filed Exhibits 7, 9, 11, and 14 under seal out of an abundance of caution to comply with any possible confidentiality interest claimed by Sanders. LeGore Aff., ¶ 19. However, through his own public filings in this lawsuit, Sanders was waived his confidentiality as to the contents of those exhibits, obviating any need by this court to redact its references to those exhibits..

Sanders made repeated requests for "his pain meds," despite being provided methadone. *Id*, Ex. 7, pp. 2, 4. Also during this period, Sanders took methadone without any adverse reaction for 53 days. *Id*, Ex. 9, pp. 1-6; Tilley Decl., ¶ 5.

On April 21, 2009, just four days after his release from custody, Sanders was seen at the VA and reportedly was alert and "in no acute distress" and appeared "comfortable." *Id*, Ex. 11, p. 1. On April 27, 2009, Sanders called the VA, requesting strong pain medication. *Id*. His doctors conferred, determined that Sanders' requested pain medication was not appropriate, and counseled him on alternative treatment, such as acupuncture. *Id*, Ex. 11, pp. 1-2. On April 28, 2009, Sanders went to the VA requesting additional pain medication. *Id*, Ex. 11, p. 2. After being told that opiate medication management was not appropriate, Sanders "walked out" and went directly to the VA emergency room to ask for pain medication. *Id*.

On May 1, 2009, Sanders was again arrested for a parole violation and contempt of court. *Id*, Ex. 12. Upon incarceration at the Columbia County jail, Sanders was initially prescribed Vicodin for pain. *Id*, Ex. 7, p. 11. On May 6, 2009, progress notes indicate that he did not demonstrate any symptoms of pain, and when offered methadone, claimed he was allergic to it and wanted something stronger. *Id*, Ex. 7, pp. 11-12; Tilley Decl., ¶ 6. Despite several refusals, Sanders eventually took the methadone, admitted that he is not allergic to it, but claimed that it does not work for him. *Id*. Medical staff provided methadone in reduced dosages until Sanders was free of the drug without side effects. Legore Aff., Ex. 7, pp. 5, 11-13, & Ex. 9, pp. 7-8. Sanders then was authorized to take Tylenol and ibuprofen for pain, but he frequently failed to exhibit any symptoms of pain and did not consistently ask for it. *Id*, Ex. 7, pp. 11-13, & Ex. 10. Sanders was released on June 10, 2009. Cutright Decl., ¶ 3.

Sanders was taken into custody on August 10, 2009, for contempt of court and menacing. *Id*; Legore Aff., Ex. 13.  When he arrived at the jail, he was wearing a Fentanyl patch on his stomach which releases pain medication for absorption directly into the skin.  Tilley Decl., ¶ 7. The Columbia County Jail classifies Fentanyl patches as dangerous contraband because they can be sold, given, or traded to other inmates, and present serious health risks.  *Id*.  By chewing on the patch, an inmate could overdose on the medication, possibly resulting in death.  *Id*.  In consultation with VA medical staff, the jail staff discontinued Sanders' use of the patch and ordered Tylenol and ibuprofen for pain, in part because Sanders had no history of pain symptoms during his most recent incarceration and denied any new injuries.  *Id*; Legore Aff., Ex. 7, p.  6. Often Sanders did not request the ibuprofen.  Legore Aff., Ex. 14.

On September 1, 2009, chart notes indicate that Sanders complained of chronic pain, but had missed a few ibuprofen doses and seemed to otherwise "be doing ok."  *Id*, Ex. 7, p. 7.  On September 9, 2009, Sanders wrote a letter to the Columbia County Board of Commissioners, demanding "let me out now, and I'll write the US District Ct, and tell them to dismiss my case. If I do a year in here, I'll file everything I can think of against this County Jail, 'preliminary injunctions: etc.'"  *Id*, Ex. 15, p. 1 (emphasis in original).

On October 13, 2009, Sanders was seen secondary to his complaint about not receiving enough pain narcotics for hernia pain.  *Id*, Ex. 7, p. 8.  At a follow-up visit on October 27, 2009, Sanders was much more comfortable, less angry, and did not talk of his threat to sue.  *Id*, Ex. 7, p. 9.  After talking at length about his complaints and medical issues, Sanders understood that he would not be given opiates for his pain complaints, as there were no findings to suggest acute

pain or worsening.  *Id*.  The notes indicate that chronic opiates were not needed for his hernia

and that he had done well off all opiates since entering the jail.  *Id*.

On November 19, 2009, after repeated complaints of pain by Sanders and continual

requests for pain narcotics, jail medical staff consulted with his VA surgeon, Dr. Goldman,  and

the VA pain management specialist, Dr. Niles, neither of whom recommended the continuing use

of narcotics.  *Id*, Ex. 7, pp. 10, 14-15.

Sanders was released from jail in March 2010.  Cutright Decl., ¶ 3.  The court docket in

this case shows that Sanders filed a steady stream of motions and papers in this case, including

nine requests for preliminary injunctions or the equivalent (dockets ## 9, 11, 20, 24, 25, 30, 31,

49, & 85).

**FINDINGS**

**I.  Proper Defendants**

Sanders names three individual county employees as defendants.  As a general rule,

"liability under § 1983 must be based on the personal involvement of the defendant."  *Barren v.*

*Harrington*, 152 F3d 1193, 1194 (9th Cir 1998), *cert denied*, 525 US 1154 (1999).  Accordingly,

"state officials are not subject to suit under § 1983 unless they play an affirmative part in the

alleged deprivation of constitutional rights."  *King v. Atiyeh*, 814 F2d 565, 568 (9th Cir 1987).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was

personally involved in the deprivation of his civil rights."  *Barren*, 152 F3d at 1194.  There is no

vicarious liability under § 1983 because "[l]iability . . . must be based on the personal

involvement of the defendant."  *Id*.  A "supervisor is only liable for constitutional violations of

his subordinates if the supervisor participated in or directed the violations, or knew of the

violations and failed to prevent them." *Taylor v. List*, 880 F3d 1040, 1045 (9th Cir 1989) (citations omitted).

Sanders does not allege that any of the named individuals personally took any action that violated his rights. His allegations relate to his various problems while housed at the Columbia County Jail in 2009 and 2010. Not one of his numerous attachments reveals that Kyles or Beatty ever took any action whatsoever against him. Sanders' allegations directed toward Sheriff Dickerson appear to be made not against him personally, but against him in his official capacity. *See* Plaintiff's Response (docket # 111), Exs. 20A, 21A, 113, & 118A (directing grievances toward Sheriff Dickerson regarding various jail conditions). Thus, Kyles and Beatty should be dismissed from the action, and the allegations against Sheriff Dickerson should be construed as acting in his official capacity.

Sanders also mistakenly brings suit against the Columbia County Jail. Section 1983 applies to actions of "persons" acting under color of state law. Local governmental units or municipalities, including counties, can be sued as a "person" under § 1983 when an official policy results in a constitutional violation. *Hervey v. Estes*, 65 F3d 784, 791 (9th Cir 1995), citing *Monell v. Dep't of Soc. Services*, 436 US 658, 690 (1978). Other types of governmental associations are only subject to suit under § 1983 if the parties that created them intended to create a separate legal entity. *Id* at 792 (intergovernmental narcotics team is not subject to suit). Typically, the city itself is sued and not the department. *See Keller v. City of Portland*, Civil No. 98-263-ST, 1998 WL 1060222 *3 (D Or Nov 13, 1998) (police department is a vehicle through which the city fulfills its policing functions). Thus, the Columbia County Jail is not a proper

defendant, and Sanders' allegations should be construed as asserted against Columbia County ("County").

Municipalities and other local governing bodies may be liable under any of three theories: (1) if an employee was acting pursuant to an expressly adopted official policy; (2) if an employee was acting pursuant to a longstanding practice or custom; or (3) if an employee was acting as a final policymaker. *Lytle v. Carl*, 382 F3d 978, 982 (9th Cir 2004). State law determines whether an employee is a final policymaker. *Id*. An employee may act as a de facto policymaker without explicit authority and may be delegated as a final policymaker by an official who possesses such authority. *Id*. A policy may be a rule or practice applicable in many situations as well as a "course of action tailored to a particular situation and not intended to control decisions in later situations." *Id* at 983 (emphasis deleted). "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F2d 1230, 1233 (9th Cir 1989) (emphasis deleted).

> The plaintiff must also demonstrate that, though its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 US 397, 404 (1997) (emphasis in original).

Here it is not clear whether Sanders is alleging that Sheriff Dickerson was acting as a final policymaker or acting pursuant to an official policy, longstanding practice or custom of the County. Given the scant personal allegations made against Sheriff Dickerson, the court will

presume, for purposes of this motion, that Sanders alleges that Sheriff Dickerson was acting

pursuant to official County policies or longstanding County practices that allegedly violated his

constitutional rights.  Any claim against the County is identical to a claim against Sheriff

Dickerson in his official capacity.  Therefore, the allegations should be construed as alleging

only claims against Sheriff Dickerson, acting in his official capacity as an employee of the

County.

## II.  <u>Prison Litigation Reform Act</u>

Under the Prison Litigation Reform Act ("PLRA"), 42 USC § 1997e(e), "no federal civil

action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for

mental or emotional injury suffered while in custody without a prior showing of physical injury."

In the Ninth Circuit, the PLRA "requires a prior showing of physical injury that need not be

significant but must be more than *de minimis*."  *Oliver v. Keller*, 289 F3d 623, 627 (9th Cir 2002).

Liberally construed, Sanders' complaints regarding his chronic pain and requests for

narcotic pain medication may allege an injury.  However, Sanders does not describe the nature of

his alleged injuries beyond making blanket complaints regarding pain and expressing anger that

he is unable to take the same narcotics prescribed by the VA prior to his incarceration.  Such

allegations are insufficient to constitute physical injury for purposes of the PLRA.  *See Oliver*,

289 F3d at 629 (finding that pretrial detainee's complaints of back pain, assault during an

altercation with another prisoner, and a canker sore were not more than *de minimis* injury

because he failed to describe the nature of the injuries from the fight and admitted that his back

and leg pain were not too serious); *Canell v. Multnomah County*, 141 F Supp2d 1046, 1053-54

(D Or), *aff'd*, 14 Appx 900 (9th Cir 2001) (finding that inmate's foot fungus, nose sores,

constipation, and winter cold were insufficient to constitute physical injuries for purposes of the PLRA).

Sanders appears to seek compensatory damages in the amount of $100,000.00, as well as declaratory and injunctive relief. To the extent that his claims are premised solely upon mental and emotional injury, those claims should be dismissed. However, his claims for compensatory damages that are premised on constitutional violations, as opposed to emotional or mental distress suffered as a result of those violations, are not barred by the PLRA. *Oliver*, 289 F3d at 630.

### III. Constitutional Violations

Sanders alleges that his First, Fifth, Eighth and Fourteenth Amendment rights were violated while housed at the Columbia County Jail based upon four theories: (1) he was denied necessary medical care; (2) he was denied access to the courts; (3) he was charged for lodging and incidental fees prior to a judgment of conviction; and (4) his grievances were intentionally ignored or destroyed. Each theory is addressed below.

#### A. Denial of Medical Care

Sanders appears to assert that his rights were violated because he was not provided with his requested pain medication. Since he was both a pretrial detainee and also a parole violator, his claims may arise under either the Eighth or Fourteenth Amendment. For those periods when Sanders was incarcerated for new law violations and had not been convicted of a crime at the time of his detention, he was a pretrial detainee, and his rights derive from the Fourteenth Amendment's substantive due process protections, rather than the Eighth Amendment's protection against cruel and unusual punishment. *Bell v. Wolfish*, 441 US 520, 535-36 (1979);

*Frost v. Agnos*, 152 F3d 1124, 1128 (9th Cir 1988).  "An inmate serving a sentence of incarceration on a parole violation is a not a pretrial detainee."  *Canell*, 141 F Supp2d at 1052.  However, the standards are essentially the same under both the Eighth and Fourteenth Amendments.  *Carnell v. Grimm*, 74 F3d 977, 979 (9th Cir 1996).  Thus, the court will analyze Sanders' claims as both a pretrial detainee and parole violator under the Eighth Amendment.

In order to state a cognizable claim for inadequate medical care, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Wood v. Housewright*, 900 F2d 1332, 1334 (9th Cir 1990), citing *Estelle v. Gamble*, 429 US 97, 106 (1976).  Deliberate indifference requires proof that the state "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 US 825, 847 (1994).  This indifference "must be substantial," and "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  *Broughton v. Cutter Labs.*, 622 F2d 458, 460 (9th Cir 1980), citing *Estelle*, 429 US at 105-06.

"A difference of opinion does not amount to a deliberate indifference to [a prisoner's] serious medical needs."  *Sanchez v. Vild*, 891 F2d 240, 242 (9th Cir 1989).  To establish that a difference of medical opinion over appropriate medical treatment amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health."  *Jackson v. McIntosh*, 90 F3d 330, 332 (9th Cir), *cert denied*, 519 US 1029 (1996) (citations omitted).  Furthermore, a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment

does not support a claim under § 1983.  *See Toguchi v. Chung*, 391 F3d 1051, 1058 (9th Cir

2004); *Franklin v. Or. State Welfare Div.*, 662 F2d 1337, 1344 (9th Cir 1981).  Finally, there is

no claim for deliberate medical indifference for delaying treatment unless the delay was harmful.

*Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F2d 404, 407 (9th Cir 1985).

      Assuming that Sanders had serious medical needs, the issue is whether the jail was

deliberately indifferent to those needs.  The County's policy regarding medical treatment

provides that all inmates will be provided with necessary medical care.  Cutright Decl., ¶ 4;

Legore Aff., Ex. 17.  The record indicates that Sanders was consistently provided with

methadone, Tylenol, and ibuprofen to help ease his complaints of chronic pain, and jail staff

consulted with his physicians at the VA on several occasions, even allowing Sanders to leave the

jail in order to receive care at the VA.  *See* Legore Aff., Ex. 7, pp. 1-4, 6, 11-13, Ex. 8, Ex. 9,

pp. 1-6, & Ex. 10.  When jail staff removed his Fentanyl patch, the record indicates that the staff

consulted with Sanders' pain management specialist at the VA, Dr. Niles, as well as his surgeon,

Dr. Goldman, both of whom agreed that the opiates Sanders requested were not necessary to

treat his pain.  *Id*, Ex. 7, pp. 10, 14-15.  In one of his many grievances, Sanders himself asked

that jail staff contact these physicians in order to verify his medical conditions and treatment

plan.  Plaintiff's Response, Ex 50A.  Jail medical staff consistently documented Sanders'

apparent lack of pain, as demonstrated by his general behavior while in jail, as well as by his

disinterest in taking Tylenol or ibuprofen for his pain when it was readily available.  *See* Legore

Aff., Ex. 7, pp. 4-7, 11-14.  In April 2009, when Sanders was between periods of incarceration,

his VA doctors rejected his requests for opiate narcotics.  *Id*, Ex. 11, pp. 1-2.

Presumably to support his claim that he has a serious medical condition that requires strong pain medication, Sanders has submitted a February 24, 2009 request to the VA from Dr. McCausland. Plaintiff's Response, Exs. 52 & 53. Dr. McCausland's letter requested an increase in chiropractic care beyond the initial six visits authorized by the VA. It also noted that Sanders had several joint alignment problems indicative of degenerative disc disease, but was silent regarding medication management, requesting only approval for increased chiropractic care. *Id*, Ex. 53, p. 2. Sanders also has submitted copies of his various prescriptions, including Fentanyl patches (*id*, Ex. 70), Baclofen, Hydrocodone, and Vardenafil (*id*, Exs. 54 & 71). These exhibits document that Sanders was indeed prescribed various narcotics and suffered degenerative disc disease. However, this evidence does not create an issue of material fact relating to Sanders' medical treatment because the record reflects that jail staff was not deliberately indifferent to his medical needs and that they provided him with constitutionally adequate medical treatment during his incarceration. Thus, defendants should be granted summary judgment on this claim.

**B. <u>Interference with Legal Assistance</u>**

Sanders also alleges a violation of his First Amendment rights based upon denial of access to the courts. Sanders makes no specific allegation of a County policy, claiming only two examples of alleged interference. Sanders first alleges that a letter to a prospective attorney, Meg Heaton ("Heaton"), was returned because jail staff put insufficient postage on the envelope. Plaintiff's Response, p. 2, Ex. 41A. Second, Sanders claims that jail staff withheld the inmate account statement he sent with his original complaint which caused Judge Mosman to deny his application. *Id*, p. 3, Exs. 11 & 51.

14 - FINDINGS AND RECOMMENDATION

Inmates do not have "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 US 343, 351 (1996). In order to establish a violation of a constitutional right of access to the courts, an inmate must establish two things: (1) access was so limited as to be unreasonable; (2) the inadequate access caused an actual injury. *Vandelift v. Moses*, 31 F3d 794, 797 (9th Cir 1994), *cert denied*, 516 US 825 (1995) (citation omitted). To establish an actual injury, the inmate must demonstrate a specific instance in which he was actually denied access to the courts. *Id*.

Assuming that there was a policy in place designed to restrict inmates' access to the courts, Sanders has not established an actual injury. With regard to his first allegation, even if a jail employee was responsible for placing insufficient postage on the letter and the letter contained documents relating to Sanders' lawsuit, this does not constitute an actual injury. Sanders has failed to allege that he suffered any disadvantage whatsoever as a result of this allegedly intentional act. Because Heaton was not Sanders' counsel when he mailed the letter to her, she would have returned it to him even with correct postage. On September 17, 2009, Heaton was appointed by the court to review Sanders' claims (docket # 48), and on October 1, 2009, she refused the appointment due to a conflict (docket # 57). The copy of the envelope includes a notation in Sanders' handwriting that it was "mailed 10.2.09." Plaintiff's Response, Ex. 41A. By that time, Heaton had already declined to represent Sanders and likely would have returned the mail unopened. Thus, Sanders did not suffer any injury from the allegedly wrongful conduct.

Turning to Sanders' second allegation, he is correct that his motion to proceed *in forma pauperis* was denied because he failed to include the documentation regarding his inmate trust

account as required by 28 USC § 1915(a)(2) (docket #14).  However, Sanders was given 30 days

to file an amended application that cured the deficiency, which he did (docket # 18) and which

ultimately resulted in his application being granted (docket # 33).  Therefore, even assuming that

his first application was deficient because of some action taken by the defendants, Sanders has

not established an actual injury because he was not denied access to the courts.  He was able to

correct the deficiency and move forward.  Since that time, Sanders has filed many documents

and motions with the court, including several preliminary injunctions, none of which have been

denied because of some interference by jail officials.  Because Sanders has suffered no injury,

defendants should be granted summary judgment on this claim.

### C.  Jail Costs

Sanders alleges that his Fifth and Fourteenth Amendment due process rights were

violated when he was charged for lodging and various other incidental fees prior to a judgment

of conviction.  Sanders is not alleging that the County had a right to take his property and failed

to pay him just compensation, as is typical of a cause of action under the Fifth Amendment's

Takings Clause.  *See Vance v. Barrett*, 345 F3d 1083, 1089-90 (9th Cir 2003).  Instead, he alleges

that the County had no right to take money from his inmate trust account in the first place, which

is more appropriately brought as a due process violation.  *Id*.  The court construes this as a

Fourteenth Amendment claim since Sanders alleges that the charges amount to punishment

before conviction, in violation of the due process rights guaranteed to pretrial detainees.[2]

Oregon law provides that:

---

[2] As discussed above, during some of the periods of incarceration at issue, Sanders was a pretrial detainee, while during other times he was a prisoner.  Giving Sanders every benefit of the doubt, the court will construe these allegations as applying to him as a pretrial detainee.

> A city, or notwithstanding ORS 169.150(1), a county may seek reimbursement from a person who is or was committed to the local correctional facility of the county or city upon conviction of a crime for any expenses incurred by the county or city in safekeeping and maintaining the person.  The county or city may seek reimbursement:
>> (a)  At a rate of $60 per day or its actual daily cost of safekeeping and maintaining the person, whichever is less, multiplied by the total number of days the person was confined to the local correctional facility, including, but not limited to, any period of pretrial detention; and
>> (b)  For any other charges or expenses that the county or city is entitled to recover under ORS 169.150.

ORS 169.151(1).

Oregon law also allows counties to charge a reasonable fee for health care services, medications, and equipment, provided that an inmate has the ability to pay.  ORS 169.150; *Canell*, 141 F Supp2d at 1057 ("[I]t is constitutionally acceptable to charge inmates a small fee for health care where, as here, indigent inmates are guaranteed service regardless of ability to pay.").  Several other states have upheld laws permitting the recoupment of some of the costs of incarceration.  *See Slade v. Hampton Roads Regional Jail*, 407 F3d 243, 250 (4th Cir 2005) (collecting statutes and cases).

While Sanders alleges that the County unconstitutionally charges fees related to booking, housing, medical services, copying, and mailing, he does not allege that he was actually charged any of these fees.  Defendants have presented evidence that the County has never sought reimbursement from Sanders for the cost of lodging at the jail.  Cutright Decl., ¶¶ 6-7.  The County has sought reimbursement from Sanders for medical expenses which he "has paid for these costs to the extent that he has had funds available."  *Id*, ¶ 8.  Exhibits submitted by Sanders indicate that he was charged for methadone on February 25, 2009, and that he received accurate information regarding the policy in response to his grievance inquiring about the booking and

housing fee.  Plaintiff's Response, Exs. 11 & 18.  No other information is provided regarding the

amount paid by Sanders for his medical care or any other expenses.  Even viewing the facts in

the light most favorable to Sanders, no evidence in the record reveals that Sanders was ever

charged any fees in violation of ORS 169.150 and 169.151.  Thus, Sanders' claim that he was

unconstitutionally punished before conviction by paying fees must fail, and defendants should be

granted summary judgment on this claim.

### D.  Grievance Procedure

Sanders also takes issue with the way grievances are handled at the jail, presumably

alleging a violation of his due process rights.  He asserts that he was not allowed to file

grievances and alleges that the jail policy is to throw away all grievance forms without

answering them.  He elaborates on this allegation in his response to defendants' motion,

asserting that the jail's failure to timely respond to grievances means that inmates cannot exhaust

their administrative remedies prior to filing suit in federal court.  In support, he attaches copies

of several grievance slips, some of which have no responses.  *Id*, Exs. 2A, 7, 12A, 18, 20A, 21A,

27, 34A, 46A, 112, 113, 117, & 118A.

Inmates do not have a federal constitutional right to an effective grievance procedure.

*Mann v. Adams*, 855 F2d 639, 640 (9th Cir), *cert denied*, 488 US 898 (1988); *Giba v. Cook*, 232

F Supp2d 1171, 1183 (D Or 2002).  Therefore, even assuming that some of Sanders' grievances

were answered after the time set by jail policy, or were not responded to at all, this does not rise

to the level of a constitutional violation.  Moreover, the record indicates that during his 300 days

of incarceration at the Columbia County Jail during 2009 and 2010, Sanders submitted

approximately 210 grievances and inmate requests, some of which required several responses by

various members of jail staff.  Second Legore Aff., ¶¶ 2-3.  Most of his grievances were related

to his medical requests (Plaintiff's Response, Exs. 2A, 12A, 27, 46A, & 118A), the grievance

process (*id*, Exs. 7, 20A & 21A), and his work credit sentence reduction (*id*, Exs. 60, 112, &

113)[3].  Viewed in conjunction with his letter to the Columbia County Board of Commissioners

demanding his immediate release from jail, or else he would file "everything [he] can think of"

against the jail in this court, Sanders' use of the grievance process could be construed as an

abuse of process.  Accordingly, defendants should be granted summary judgment on this claim.

## IV.  **Qualified Immunity**

The doctrine of qualified immunity protects "government officials performing

discretionary functions . . . from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known."  *Harlow v. Fitzgerald*, 457 US 800, 818 (1982).  In analyzing a claim of qualified

immunity, the court must make two inquiries:  "First, we inquire whether, taken in the light most

favorable to the party asserting the injury, that party has established a violation of a federal right.

Assuming this threshold inquiry is satisfied, we consider whether [defendants'] conduct violated

clearly established statutory or constitutional rights of which a reasonable person would have

known."  *Preschooler II v. Clark County Bd. of Trs.*, 479 F3d 1175, 1179-80 (9th Cir 2007)

(internal quotations and citations omitted).  However, courts may "exercise their sound

discretion

---

[3] To the extent that Sanders is attempting to allege a freestanding constitutional claim for miscalculation of his work credits by submitting copies of his grievances relating to these complaints, this claim is without merit.  He has presented no evidence that his work credits were actually miscalculated.  Moreover, defendants have presented evidence that Sanders received the maximum amount of work credits possible.  Cutright Decl., ¶¶ 11-12.  Accordingly, defendants should be granted summary judgment on any claim relating to miscalculation of work credits.

in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, – US – , 129 S Ct 808, 818 (2009). Having found no violation of a constitutional right, the court need not reach the issue of qualified immunity.

**V. Costs**

Defendants assert that Sanders' lawsuit is frivolous and an abuse of process and seek an award of costs and some attorney fees as a sanction. However, defendants provide no legal argument demonstrating that such a sanction is appropriate in this case. Accordingly, the court should decline to award costs and fees against Sanders. However, given his past history of filing multiple grievances and motions, combined with his threat to the County, Sanders should be cautioned that he will be subject to the imposition of monetary sanctions in the future if he files meritless claims.

## RECOMMENDATION

For the reasons discussed above, defendants' Motion for Summary Judgment (docket # 101) should be GRANTED, and a judgment should be entered dismissing this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 30, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of August, 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge